613-720-640. Brenda Maier, appellant by Jason McGarrett v. C C Services, Incorporated, FLE County, Tarleton. Thank you. Mr. McGarrett? Yes. Good morning. Good morning. May it please the Court. A fairly straightforward matter that turned into a bee's nest, so to speak. This is a motor vehicle crash claim that we're here on appeal today regarding underinsured motorist benefits, or what I will refer to as UIM, just as a short matter. And we're here today on our appeal on five bases, essentially. Number one, we believe that the trial court erred in finding that there were no issues of fact regarding whether Country Mutual had received adequate notice to trigger a duty to defend or handle the claim process for the plaintiff's UIM coverage. Issue number two is we believe that the trial court erred in finding that there was no issue of fact whether or not the plaintiff was required to make a formal written demand for arbitration under the policy as it pertains to UIM coverage benefits. Issue number three, we believe that there was an issue with the court finding that no issues of fact existed as to whether or not a section of the insurance code that has a tolling provision applied to the plaintiff's UIM coverage. Issue number four, we believe that there was an error by the trial court in finding no issues of fact on the issue of estoppel. And lastly, we believe that there was an issue with the trial court's ruling that there was no public policy as to a conflict between two clauses within the policy itself. Getting back to number one, we believe that there was sufficient at least to trigger the issue of finding of a material issue of fact regarding whether or not notice was provided to Country Mutual regarding the plaintiff's claim for UIM benefits. We cite to the Hale case, which I know that defense counsel has issues about whether or not that's good law or not. The plain meaning or plain fact is that that case has never been overturned by any court, even the cases that counsel cite in their brief. It's never been overturned. So the notice, an adequate notice holding in the Hale case, we believe is factually similar to this case. In this particular case, letters of correspondence were sent to Country, companies putting them on notice of a claim with regards to the plaintiff for personal injury benefits, which are provided under the underinsured or UIM portions of the policy. The adequacy of that notice based on the case law that we cite in our brief is generally held to be a question of fact. Whether or not the plaintiff's letters and correspondence to Country taken in conjunction with the actions taken by Country, i.e. assigning a claim number, assigning a claims representative, taking steps to send letters of acknowledgement of representation, letters of acknowledgement of receipt of a claim. Those are all things that we believe establish adequate notice, but at a minimum establish that there's an issue of fact whether or not Country received adequate notice of a claim or not. The proof of notice or proof of loss is not defined in the Country policy at all. You'll find no definition of proof of loss in the Country policy whatsoever. What you will find is in the general conditions portion of the policy, what the requirements of the insured to do under the policy are, which is provide the name of the injured party and any potential witnesses there will be, which is what the plaintiff did in this case. They provided general notice to Country Mutual that they were making a claim. Again, Country took steps as it related to this claim, assigned a claim number, opened a reserve, assigned an adjuster, took a recorded statement from the insured. Also, the insured had numerous conversations with her agent as to her intent to pursue a claim. For purposes of this case, the Country agent, he's not an independent agent, he's a captured agent for Country, the company's insurance company, is the same as giving notice of information on a claim to Country itself. He is a representative of Country. Even on the greatest stretch of apparent agency versus actual agency, you're going to, or we would ask that you would find that he is an agent of Country for purposes of providing notice of a claim. In fact, the agent did, in fact, fax information on behalf of the plaintiff to Country about her claim, including medical bills and other information concerning her claim. But getting back to this first issue, which is an error by the trial court in finding that absolutely there's no genuine issue of material fact as to whether the plaintiff provided notice to Country Mutual regarding her claims, we think that, again, that's an error by the court finding that there's no issue of fact. When the case law suggests that general notice of whether that, and whether or not that notice is sufficient or not, is generally held to be an issue of fact for a trier of the facts to determine. So we believe that it was an error by the trial court to find that the correspondence from the plaintiff to Country, the actions taken by Country, made it, or was so clear that as a matter of law, the plaintiff had not provided any notice whatsoever of a claim to Country. Is there a requirement to provide notice of an underinsured woman's claim? That is the, segues into argument number two, Your Honor, which is this, Country argues that under the policy terms, there is a provision that requires a insured to make a specific express written demand for arbitration as a part of the process of pursuing a UIM claim. Our position is that there is, in fact, absolutely no policy provisions or conditions or conditions precedent that require our mandate an insured to make a formal express written demand for UIM benefits. The only portion of the policy that touches on making a formal demand for arbitration deals with uninsured motorist coverage. When the carrier, the insurer, and the insured disagree as to whether or not the insured is entitled to recovery or entitled to coverage. We don't have this in this case. There is never a formal letter from Country until after the plaintiff had made the claim for UIM to say, hey, wait a second, you didn't make a formal written demand for arbitration pursuant to the policy and therefore we're denying your claim. There is no requirement in the policy that you make a formal written demand for arbitration as a condition precedent to the coverage provided under the underinsured motorist provisions of the policy. The Illinois Insurance Financial Responsibility Law that mandates carriers to provide underinsured or UIM benefits also contains no express provision requiring the arbitration of a UIM claim. If you look at the statute itself, it doesn't mention requirement of arbitration for UIM coverage. In fact, we cite to a couple of cases in our brief that actually stood for the proposition that the financial responsibility law does not and has never been held to require arbitration of a UIM claim. There is a distinction between uninsured and with uninsured motorist problems, which is a different coverage than UIM. UIM is underinsured motorist and it applies when a carrier, the at-fault carrier doesn't have enough insurance to adequately compensate the injured person and so they can go under their own insurance to obtain additional coverage rather than substitute coverage, which is what you get in an uninsured motorist situation. But again, there is no case, there is no case that I'm aware of anyway that requires arbitration of UIM claims. And that's key in this case because the cases that defense counsel cites to are uninsured motorist claims where arbitration is required under the section of the financial responsibility law. And so what you have here is country trying to apply one set of standards for one set of claims to a different set of claims under the policy. Even here, had there been any discussion or any back and forth with country companies and even just reading the arbitration clauses? There has to be a disagreement first, right? There has to be some where there's no meeting of the lines. I mean, had there been any of that? I agree, Judge. Yes, the way that we interpret the policy is that arbitration is only required if there is a disagreement between country or the insurer and the insured as to whether they're entitled to any coverage. In this case, the facts of the plaintiff, the insured, a demand for coverage. We provided notice of the loss. They took a statement from the insured indicating that she was involved in a motor vehicle crash, that she had sustained personal injuries. They had processed some of her medical bills under the medical payments coverage, which is an additional coverage under the policy. But then when it came time to try to process the underinsured motorist claim or UIM claim that there was this denial based upon, well, wait a second, no formal written demand for arbitration had been made. We don't believe that there is any requirement for a formal demand of arbitration unless there's a dispute as to the amount that the plaintiff is entitled to recover or that there is a dispute as to whether they're entitled to coverage at all. In this case, there was no dispute as to whether there was a formal written demand for arbitration. There has to be a disagreement or a dispute as to whether there is coverage that applies or whether the amount   of the claim itself, i.e., there's a dispute about what the value of the claim is. That, we believe, is the only circumstances under which a formal written demand for arbitration must be sent to country. That also segues into the tolling issue that we raise in our appeal as well. We believe that Section 5143.1, which is a tolling provision under the Illinois Insurance Code, does apply in this case. I believe that Defense Counsel actually has conceded in their brief that the section technically applies to UIM claims as well. Where we get into a disagreement is in regards to whether or not, again, in this particular case, they argue that a formal written demand for arbitration was always required under the policy, and therefore, the tolling provision doesn't apply because we didn't follow the requirements under the policy. You won't find in the policy any requirement of a formal written demand for arbitration. You simply will not find it at all as it relates to UIM coverage. But even if it is required, we believe that the tolling provision of the statute began on the date on which the plaintiff provided proof of loss to country, which was in January of 2011, until the date that country formally denied the UIM claim, which was in October of 2012. So there would be months there, almost a year, that the claim would have been tolled. What are you saying constituted the notice of proof of loss? We believe that the letter of representation and notice of attorneys lien providing notice that our office was representing Brenda Meyer for a claim against the country was proof of loss. We also believe that the providing of a recorded statement giving them all of the details and facts of the crash also provided proof of loss to country financial, which was enough information under their general conditions to trigger coverage. But your letter doesn't say anything about what the claims are. I agree. The letter is not as explicit as we would all like. But there was a claim number at the top of that letter. What triggered the claim number? The claim had been reported by the insured, Brenda Meyer, to country previous to our involvement in the case. Correct. They had assigned a claim number. They had actually written to her prior to our involvement, advising her of her rights and responsibilities under the policy. And I would note that none of those rights and responsibilities included any advisory to her that she was required to make a formal written demand for arbitration for any coverages under her policy. Only advising her that medical payments, coverage payments would reduce the amount that she would be entitled to prospectively under the UIM coverage. Is there any reason under the policy or under insurance law that you're not claiming that her notice through her agent constituted a proof of loss? We believe it is sufficient proof of loss, which is issue number one in our appeal, is that we believe the court erred in finding that there was no issue of fact as to whether or not there was any notice of loss to country. Right, but you're arguing that it's through the letter. And I'm asking you why it was that the things that came before your letter that led to the assignment of a claim number and an agent or representative. Sure. I don't think it's just the letter. I think it's a conglomeration of all of those things. In addition to the affirmative actions that country took on their side of this to establish a claim, set up a reserve, assign a claim number, correspond with its insured, correspond with us. I think all of those things taken as a whole at a minimum would suggest that there's an issue of fact as to whether there was sufficient notice of the claim. So even though there's not a definition in the policy, proof of loss is proof of an accident with damages and injuries and not proof that the other driver was underinsured. I agree. Although during the course of the two-year period of time that country argues that the claimant needed to be handled within, they did in fact gain that knowledge that the at-fault driver was underinsured. And they in fact opened up an underinsured reserve for the case. And they kind of sat back and waited to see what happened. But yes, I think all of those things again minimally raise an issue of fact. Thank you. Good morning. I'm a little nervous this morning. How are you doing? Because the Cubs have to win tonight. I'm nervous. This is an issue that probably it would be hard to find a case that has more appellate decisions going one way in Illinois than this issue, even including to the Illinois Supreme Court, the Whitehead case, which came through the third district on the way to the Supreme Court. There is, yes, there was an auto accident that Brenda Meyer was involved with another vehicle. She reported the accident to her agent, like anyone involved in an accident at the time. She had another law firm before the Strong Law Firm, as pointed out, and she had medical payments covered. She had medical bills that were being processed. Then for whatever reason, Ms. Meyer switched law firms to the Strong Law Firm. And they sent a letter to the MedPay representative who was handling the MedPay. She had gotten letters about MedPay, your rights under MedPay. It's in the record about two years medical bills incurred within dates of the accident. And those were being paid during that time. Country had medical payment, potential obligations, subrogation rights residing out of those payments, property damage payments, subrogation rights out of those payments. Of course, they submit a claim number every time they learn of an accident. They're insured could be sued for something from an accident as well. So the claim number is associated with an accident. But basically, counsel's argument is just that, okay, once you know about an accident, then that dispenses with everything, essentially his argument. When they switched law firms to, or she, to the Strong Law Firm, the only letter sent within two years, nothing from the insured, nothing from the Catlin Law Firm, nothing from any other law firm. It wasn't just a generic notice of representation letter that I represent Brenda Meyer. It doesn't represent uninsured. It doesn't say underinsured. It doesn't even say MedPay. It doesn't say anything specific about any claim of any kind. It doesn't provide any damages or injuries, witnesses, any information whatsoever. Then the record is devoid of any other communications prior to two years from the date of the accident. Completely devoid of any written communications acknowledging it, saying, oh, we have an underinsured motorist claim, yes, fill out a form, anything like that until October 12th of 2012, after the accident, they write a letter saying, we've settled with the torque feeser. Here we think we want to know about uninsured motorists. First time uninsured motorists is even named, let alone a demand, let alone a demand for arbitration, let alone a demand naming an arbitrator, nothing for within the two years whatsoever. No case. But even, you know, there's been no dispute. I mean, yet the policy says that if you disagree about something, that's when arbitration kicks in. Well, that's the, well, that's, yeah, if you look, there's like three or four decisions of the appellate courts that have already addressed and rejected that identical argument called the exhaustion clause, whether you exhaust first and have a disagreement. That's been rejected probably four or five times. What's the language on the policy? I mean, this policy is pretty clear. It says that if you don't, if the insured and the company, they don't agree about it, then you have to go to arbitration. Here, like you hadn't had any back and forth about it, correct? Correct, because there was never even a claim. There was never an underinsured, there wasn't an uninsured motorist claim. Then you're saying, Your Honor, that then five years, well, we set up reserve every time. Every insurance company is required in Illinois to set up reserves when they have notice of an accident. You don't know what's going to happen. For example, you have a notice of an injury claim and you're insured as alleged to be at fault. You set up a reserve. If they don't file suit within two years, you take the reserve down and you close the case, regardless of what communication. Wasn't there also an underinsured reserve that was there too? There was a reserve. Well, I don't know the exact number of the reserves or how they allocate between liability, property, underinsured, medical payments, reserve. But that was an internal document because someone recognizes that, just like in a tort case, if you get notice of an accident and you're insured is involved, well, gosh, they might file suit. We have to open a reserve. Someone might sue them or make a claim. And if they don't, that doesn't extend the statute of limitations for making a tort claim. It never has. That's why the courts have repeatedly talked about the difference between notice provisions and limitation provisions, entirely separate purposes, entirely separate requirements. This case, and even besides the White House case, there's been a couple other unpublished cases that have come through the Third District here that have enforced these exact provisions. We have underinsured motorist cases. We have the Hermanson case, the Shelton case, other cases that involve underinsured motorists. It's the exact same language, exact same purpose here. We have what you're saying if someone has notice and then they don't make a demand. So here they had no communication. They didn't say anything about uninsured motorists until after two years. So what that argument would be is no disagreement, then what if it wasn't two and a half years? What if it was five years, ten years? And you could say, well, there's no disagreement within ten years, so it just extends forever. There's no limitation. You just wipe the limitation period out of the policy completely. And that's addressed in my argument in my briefs, in several of the case arguments. That specific argument was rejected by the trial court, relying on the published case law, on that very argument and issue, and the very clause here. The exhaustion clause contingent is when you pay a claim. Now, disagreement, if you don't, obviously you can't have a disagreement if you never make a claim, because by the trial court said you have a disagreement because you haven't come to a resolution. In a tort case, if you don't come to a resolution, you have to file suit within two years or you're out of luck. There's no exception, just because we don't have a meeting of the minds. You have to, in those cases, the only thing that extends it is if someone says, for example, well, I won't file suit within two years while we continue to negotiate. Will you agree to waive the statute of limitation? Here there's not even mention of the word underinsured motorist until after two years. What language in your policy lets them know that they have to do that? It's quoted in the briefs and in the policy. I don't have the policy. The policy is in the record. Look at the amendment. The one that talks about underinsured. Yes, look at the amendment to the, I don't have the actual page number, but it's in the policy and the amendment. In Illinois policy, when it talks about underinsured motorist, it talks about the section. It has the exact language there that applies to underinsured motorist. It's the same. If I had it in front of me, I could point it to you, but I don't have the actual policy itself. And then there's the policy form, which has the first party and the third party coverages, property coverages, and then there's the Illinois amendment to the provisions that amend certain conditions and provisions and exclusions for uninsured and uninsured motorist coverage. And it applies just like the court. I didn't really compare and address that argument because it wasn't really raised below because it's in the language and it's been enforced, the same language has been enforced probably 40 times in Illinois in cases I've handled alone, let alone probably 15 published decisions. I was looking at the court's order and the paragraph that it relied on about arbitration, and it only talks about uninsured motorist. Okay, well, I would refer you to the actual policy yourself, Your Honor, which is in the record. I don't, I mean, I don't have the exact page number here because, but it's in, I'm telling you that it's in there. And if you've got time when you're deliberating to look at it, that's, thank you. And, you know, this idea of really basically the argument always below was it didn't object, didn't really raise that issue. It really was always that this letter of representation was sufficient under Hale, a decision that was contrary to every other district in the state and really contrary to what the Supreme Court ruled on Whitehead, that this was somehow not perfect but a sufficient demand for arbitration as required by the policy. That's what they argued principally below. And, of course, even Hale, though if you look at Hale's decision, that initial letter mentioned underinsured motorist claim. They sent an underinsured motorist claim form to the insured within two, or the council, within two years. And there are other circumstances that were totally different here where there was the absence of even the word underinsured motorist, let alone claim, let alone damages, let alone injuries of any kind, let alone from Buccalow to Shelton to Rhine to Parrish to Hermanson to Wancho that have required a written demand for arbitration within two years of the date of the accident, naming an arbitrator, or filing suit. So there has been, in the Whitehead case, which principally dealt with the issue of whether, in interpreting this identical provision, the court would apply the two-year limitation provision in the policy or adopt a three-year Wisconsin tort limitation. The Supreme Court found that no Illinois public policy would, didn't require adopting, following Wisconsin tort law, two years was sufficient for the limitation period. And the Whitehead court quoted their discussion about, in Whitehead, there had been a claim within two years for underinsured motorist benefits. And they referred to that claim. They said clearly a claim would not be the efficient legal action as required by this policy to satisfy that provision. It wasn't. So they said even underinsured motorist claim within two years was not sufficient, which every other appellate court, even Hale talked about the provision being enforceable and unambiguous and not against public policy. Every other court has enforced, including, as I said, several unpublished decisions from this district as well. And the tolling, I mean, I don't understand tolling. Tolling is proof of loss. It's not even, it doesn't even say proof of loss of what? Is medical payments, property damage, tort claim that the agent breached their duties. There's no damages. There's no injury. It doesn't say whether she has a hangnail or a broken or amputated foot. There's nothing, no medical, no nothing of any kind and nothing submitted. You'll see nothing in the record within two years. There's no communication, you know, there's no communication from the insured with country at all. She meant that she never talked to country. She said when she did talk to the agent, she testified in her deposition, she was told there was a two-year limitation period. She hired counsel then who did all the communications with country. Again, first the Caitlin Law Firm and then the Strong Law Firm. But she testified she had no communications with anyone at country. She initially had communications with her agent when she had an accident, which is very normal for someone in an accident. The first person they're going to call typically might be their agent. And, again, she had other claims. She had damage to her vehicle and she had other coverages besides liability and UM, UIM, property coverage, collision, comprehensive, rental car coverage, you know, those kind of coverages. And, again, I guess it's just, again, as counsel said in the very beginning, he conflates what they did below and here, talking about adequate notice, when we're talking about a limitation provision that requires certain minimum steps. They get demands for arbitration all the time within two years because that's what the case law, if anyone researches some of the case law, any lawyer handling this area of law would know what was required of them if they're going to practice in this area of law. It's set forth over and over again in the cases. It's set forth in the policy. That's why the trial court noted the overwhelming body of case law on this very topic, very provision, where here we don't even come close to the one case that has found any exception to it whatsoever, the Hale case, which was extensively criticized in Ryan v. State Farm, which, again, in this case is not even close to those facts. And Ryan criticized it, and the Supreme Court followed Ryan, not Hale, and they also gave us basically guidance on this very issue. If you look at paragraph 40 of their Supreme Court opinion, it will really give you the answer to the question in this case as well. And thank you very much. Thank you, Mr. Carlson. Mr. Dewey and Lee Butler? Yes. Judge, you actually can find the information you were looking for in their brief. They conveniently quoted the section for uninsured, underinsured motorists. It's on page 7 of their brief. And I'll read it to you verbatim. Arbitration. If we had an insured disagree over whether the insured is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle, or if agreement cannot be reached on the amount of damages, either party must make a written demand for arbitration. That is the only clause you will find in the policy whatsoever dealing with a formal written demand for arbitration. Is there an agreement reached in this case? There was no disagreement. That's a double negative. No disagreement means agreement. No, there was no agreement. There was no disagreement. There was no dispute between the insured and the insurer as to whether there was legal entitlement. How can you dispute something that you haven't asked for? Well, that's the key to this case, Your Honor. I'm glad you asked because what you have is a situation where a country opened up a UIM claim. And if you look at the automated claims transactions, which we did in this case, they opened up a UIM claim and then they sat back and they waited to see what would happen. And then when it came time for them to pay under the UIM provisions, they came up with this. Well, you didn't make a formal demand for arbitration. That's not required under the policy. And I know that counsel got up here and, you know, this is required. There's all these cases that say it's required. Well, the policy itself doesn't require it. And that's what's controlling in this issue. The policy itself does not require a formal written demand for arbitration as a conditioned precedent to the provision of UIM coverage. I'm just stuck on the disjunctive, which the trial court focused on as well. It doesn't matter why an agreement cannot be reached. It's just if an agreement cannot be reached. In this case, an agreement could not be reached because the first step in assigning an amount to the claim never happened. Am I misreading the case law? I don't think you're misreading the case law. I think where we have the dispute is whether or not sufficient notice was provided to country regarding what the insured was demanding, which was coverage. And that comes back on your notice of lien, attorney lien. I don't think that's just the sole basis of notice that was provided to country. I think that the totality of the circumstances is sufficient to trigger the jury to decide whether sufficient notice was required. Tell me what the circumstances are that are outlined in the complaint. Sure. The plaintiff provided notice to country companies through her agent that she was involved in a motor vehicle crash, that she had sustained personal injuries, and that she was making a claim for property damage as well. That triggered country then to open up a medical payments reserve, a property damage reserve, and an underinsured motorist coverage reserve. But the fact that they opened it up doesn't mean she asked for it. They're just being prudent. Disagree. There would be no reason for them to open up an underinsured motorist reserve unless they had a belief that there would be an exposure for underinsured motorist coverage. And in this case, they even went as far as to confirm what the torque feesers limits were of their policy as a part of that investigation. Why would you do that unless you had some reasonable basis of belief that a claim was being pursued for that coverage? What are the other circumstances you have mentioned? Sure. As to notice. The plaintiff's deposition testimony was that she did, in fact, have discussions with her agent regarding underinsured motorist coverage and that she provided medical bills as a part of that process to her agent and had requested that they be paid as well and considered by country as a part of that. There's also the letters and correspondence from country that came to our office in regards to the reduction of underinsured motorist coverage benefits as a result of payments made under the medical payments coverage. One minute, please. So again, getting back to our original argument, we believe that there's an issue of fact as to whether or not country had sufficient notice of the claims that the plaintiff was making, which included an underinsured motorist claim. We believe that was an error by the trial court to hold that making a formal written demand for arbitration is a conditioned precedent of coverage under the underinsured or UIM coverage. We don't believe that there's anything in the policy that requires that. The defense counsel even quotes the section of the policy in their brief regarding underinsured motorist coverage, and there's no requirement in there that we provide a formal written demand for arbitration as a conditioned precedent to underinsured motorist coverage. Thank you. Thank you. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible.